UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

REVERGE ANSELMO and SEVEN HILLS LAND AND CATTLE COMPANY, LLC,

        Plaintiffs,

   v.

THE COUNTY OF SHASTA, CALIFORNIA, and RUSS MULL,

        Defendants.
_____/

NO. CIV. 2:12-361 WBS EFB

<u>MEMORANDUM AND ORDER RE:</u>
<u>MOTION TO DISMISS</u>

----oo0oo----

      Plaintiffs Reverge Anselmo and Seven Hills Land and Cattle Company, LLC ("Seven Hills") have brought this action against the County of Shasta, California ("Shasta County") and Russ Mull alleging claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and 42 U.S.C. § 1983 for violations of plaintiffs' First and Fourteenth Amendment rights arising out of Anselmo's desire to construct a private chapel on land located in Shasta County.  Defendant Mull has brought a

1

motion to dismiss the Complaint in its entirety for failure to
state a claim upon which relief can be granted pursuant to
Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 7.)

I.    <u>Factual and Procedural Background</u>

        According to the Complaint, defendant Mull is the
Director of the Department of Resource Management for Shasta
County, and in that position he oversees the county departments
of building, planning, environmental health, air quality, and
community education.  (Compl. ¶ 6.)  Plaintiffs further claim
that "the activities and conduct [alleged in the Complaint] of
all COUNTY personnel . . . were carried out either directly by
defendant MULL or by subordinate personnel acting at the
instance, direction, knowledge and supervision of MULL, to
execute and implement decisions made by MULL."  (<u>Id.</u>)

        Plaintiffs allege that in 2005, Anselmo purchased
property consisting of ranch and farm land in Shasta County,
where he currently lives.  (<u>Id.</u> ¶¶ 3, 14.)  He is also the sole
owner of Seven Hills, through which he owns and operates a ranch
and winery on this property.  (<u>Id.</u> ¶¶ 3, 4.)  The Complaint does
not allege that Seven Hills is a religious organization.  Two
relevant laws limiting land use apply to the portion of the
purchased property at issue here.

        First, plaintiffs allege that under Shasta County
zoning regulations, the portion of property at issue is located
in an Exclusive Agriculture ("EA") zone, the purpose of which is
to preserve lands with agricultural value and identify lands that
may be suitable for utilizing provisions of county code relating
to agricultural preserves.  (<u>Id.</u> ¶ 15.)  Plaintiffs represent

that while some uses such as single-family dwellings, nurseries, or small wineries are permitted outright in EA zones, other uses require permits.  Shasta County Code § 17.06.020.  Uses allowed with the proper permit include senior citizen residences, bed and breakfast facilities, farm labor quarters, fowl farms, and medium wineries.  Id. §§ 17.06.025-.040.  The county code additionally provides that permits may be issued for "uses found similar in character and impact" to uses explicitly permitted with or without a permit.  Id. § 17.060.050(b)).

     Second, plaintiffs allege that Anselmo's land is located in an Agricultural Preserve ("AP") zone.  (Id. ¶ 16.) According to plaintiffs, the AP zone identifies those lands that Shasta County is willing to make subject to a Williamson Act contract as part of a state program promoting long-term preservation of agricultural land.  (Id.)  Under the Williamson Act, cities and counties may enter into contracts with land owners of qualified property to retain the agricultural, recreational, or open-space use of land of the land in exchange for lower property tax assessments.  See Cal. Gov't Code § 51200 et seq.

     The portion of land at issue here is subject to a Williamson Act contract that was entered into by the county and Seven Hills.  (Id. ¶¶ 17, 18.)  The contract provides that all uses allowed in an EA zone are permitted on the parcel and provides that "[a]dditional compatible uses may be added or deleted . . . upon mutual agreement of the parties."  (Id. ¶ 18.) A "compatible use" for purposes of the Williamson Act, in turn, is defined by state law as "any use determined by the county or

3

1  city administering the preserve . . . by this act to be

2  compatible with the agricultural, recreational, or open-space use

3  of land within the preserve and subject to contract."  Cal. Gov't

4  Code § 51201(e).

5          Plaintiffs contend that on February 8, 2007, the Shasta

6  County Planning Commission voted to grant Anselmo a use permit

7  for the property at issue here.  (Id. ¶ 22.)  The permit provided

8  that Anselmo could use the property for "[a]ll uses permitted in

9  the EA district as permitted uses, but not limited to the two

10 existing residences, farm laborer quarters and various

11 agricultural buildings and uses currently on the project site,"

12 guided horseback tours, and a small winery with "production

13 capacity up to 5,000 cases per year, with related accessory

14 structures, production facilities, retail & wholesale sales

15 areas, administrative offices, on-site 'tasting room,' food

16 service, storage, etc."  (Id.)

17          In May 2008, plaintiffs allege that Anselmo applied to

18 have the use permit amended to allow for a "medium winery."  (Id.

19 ¶ 25.)  The Shasta County Planning Commission approved the

20 application and issued a new use permit that allowed plaintiff to

21 operate a medium winery that produced up to 25,000 cases per year

22 and to host special events including weddings, anniversaries,

23 graduation functions, family reunions, and "other uses similar in

24 character and intensity."  (Id. ¶¶ 25-27.)  These special events

25 could only take place three times a month and were limited to 120

26 people, unless additional permission was granted by the

27 Environmental Health Division.  (Id. ¶ 27.)

28          According to plaintiffs, Anselmo is a devout Roman

4

Catholic and the ability to build and use a chapel on his land is "central to his ability to worship his religion in accordance with his core beliefs and the depth of his faith." (Id. ¶¶ 7, 8, 29.)  The Complaint explains that although there are Catholic churches located nearer to his ranch, the nearest place of worship that "coincides with [his] religious training and background is the Abbey of New Clairvaux in Vina, California," which is located approximately one-and-one-half hours by car away from his property. (Id. ¶ 29.)  This distance allegedly frustrates Anselmo's "desire to worship almost daily, whether by formal Mass, confession or prayer." (Id.)

Anselmo further represents that it is his belief that "he should dedicate this tiny portion of his property to his faith and his God," and that "in the context of his beliefs" the construction of a chapel on his property is "an act essential as a demonstration of his faith." (Id. ¶ 31.)  He intends to make this chapel available to laborers at his ranch as well as to visiting priests, and expects that enough priests would be interested in coming to the chapel "for retreat" that a priest would almost always be in attendance. (Id. ¶¶ 30, 32.)  Once completed, the chapel will have seating capacity for 32 people and a maximum capacity of 42 people. (Id. ¶ 44.)

Before beginning construction on the chapel, on December 6, 2010, Anselmo's contractor submitted an application for a building permit to Shasta County. (Id. ¶ 33.)  The permit sought permission to build a private chapel on 435 acres of plaintiff's land. (Id.)  After an initial review of the application, the County Department of Resource Management

1  requested the submission of additional information, but "gave no

2  indication that the COUNTY would raise insurmountable obstacles

3  to the issuance of the permit." (Id.)

4        The building permit application, BP 10-1798, had a

5  maximum duration of one year. (Id.) Shortly after applying for

6  the construction permit, plaintiffs began construction of the

7  private chapel. Plaintiffs allege that Shasta County has a

8  practice of issuing "as built" permits for construction that is

9  already underway or completed if it determines that the

10 construction and application are compliant. (Id. ¶ 35.) They

11 further allege that at no time during the pendency of BP 10-1798

12 did defendants advise plaintiffs that they would never issue a

13 permit, reject the application, or cite plaintiffs for

14 construction performed without a permit. (Id.)

15       During the period that the construction permit was

16 valid, plaintiffs contend that defendants made the following

17 individualized assessments regarding plaintiffs' proposed

18 construction of a private chapel. (Id. ¶ 36.) First, plaintiffs

19 allege that defendants determined, without a hearing, that the

20 private chapel would be incompatible with and in violation of the

21 Williamson Act contract on the property. (Id. ¶ 36(A).) Second,

22 plaintiffs allege that defendants determined that the private

23 chapel would violate both EA and AP zoning regulations and that

24 the violation could only be remedied by re-zoning the property.

25 (Id. ¶ 36(B).) Third, plaintiffs allege that defendants

26 determined that the private chapel would be a "commercial use,"

27 "public building," or "public accommodation" subject to certain

28 requirements under the Americans with Disabilities Act ("ADA").

1  (<u>Id.</u> ¶ 36(C).)  Fourth, plaintiffs allege that defendants engaged

2  in "dragnet enforcement" when they determined that there were

3  county code violations elsewhere on the property that prohibited

4  further construction under Shasta County Code section

5  16.04.160.C.2.  (<u>Id.</u> ¶ 36(D).)

6          Plaintiffs additionally allege that these

7  determinations were made in a concerted effort to retaliate

8  against plaintiffs for an unrelated dispute concerning a separate

9  portion of plaintiffs' property.  (<u>Id.</u> ¶ 36(E).)  They do not

10 allege that this animus was related to Anselmo's religious

11 beliefs.

12         In March 2011, Anselmo claims that, although he

13 believed that the chapel was in fact a permissible use in an EA

14 or AP zone, he applied to have the property on which he had begun

15 construction of his chapel re-zoned as Commercial Recreation

16 ("CR").  (<u>Id.</u> ¶ 37.)  Although this application remains open,

17 plaintiffs allege that, because defendants continue to assert

18 that the chapel is inconsistent with the Williamson Act contract,

19 that certain ADA requirements must be met, that other code

20 violations bar construction of the chapel, and because of an

21 "undercurrent of retaliation" against Anselmo, the rezone

22 application "cannot move forward in a manner that provides

23 plaintiffs relief."  (<u>Id.</u>)

24         On December 6, 2011, BP 10-1798 expired.  (<u>Id.</u> ¶ 40.)

25 Plaintiffs do not allege that BP 10-1798 was denied or that they

26 submitted a second application after BP 10-1798 expired.

27         One month later, plaintiffs allege that they received a

28 written notice of non-compliance with the Shasta County Code and

7

1   Williamson Act.  (<u>Id.</u> ¶ 41.)  Specifically, the notice warned

2   that the chapel violated EA and AP zoning regulations, the

3   Williamson Act contract, and was being improperly built without a

4   construction permit.  (<u>Id.</u>)  Several days later, a Shasta County

5   code enforcement officer delivered to plaintiffs a warning notice

6   that cited Anselmo for constructing the chapel without a required

7   permit and demanded that all work on the chapel stop immediately.

8   (<u>Id.</u> ¶ 42, Ex. C.)[1]  That same day, the code enforcement officer

9   also placed a "red tag" stop order on the chapel door.  (<u>Id.</u> ¶

10  43, Ex. D.)[2]

11       Plaintiffs filed suit on February 13, 2012, asserting

12  claims under RLUIPA[3] and under § 1983 for violations of

13  plaintiffs' First Amendment rights to free exercise and

14  Fourteenth Amendment rights to due process.  (Docket No. 1.)

15  Plaintiffs request monetary and injunctive relief, including

16  punitive damages as against defendant Mull.  (<u>Id.</u>)

17  II.  <u>Discussion</u>

18       To survive a motion to dismiss, a plaintiff must plead

19  "only enough facts to state a claim to relief that is plausible

20

21
_____

22      [1]   Plaintiffs attached a copy of this warning notice to
    their Complaint as Exhibit C.  Accordingly, the court may
    consider it in ruling on defendant's motion to dismiss.  <u>See</u>

23  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling
    on a 12(b)(6) motion, a court may generally consider only

24  allegations contained in the pleadings, exhibits attached to the
    complaint, and matters properly subject to judicial notice.")

25
        [2]   For the reasons stated above in footnote one, the court

26  may consider the red tag stop order attached to the Complaint as
    Exhibit D.

27
        [3]   Plaintiffs bring their RLUIPA claims as stand-alone

28  claims, not under § 1983.

                                  8

on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

(2007).  This "plausibility standard," however, "asks for more

than a sheer possibility that a defendant has acted unlawfully,"

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), and "[w]here a

complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"  <u>Id.</u>

(quoting <u>Twombly</u>, 550 U.S. at 557).  In deciding whether a

plaintiff has stated a claim, the court must accept the

allegations in the complaint as true and draw all reasonable

inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416

U.S. 232, 236 (1974), <u>overruled on other grounds by Davis v.</u>

<u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

(1972).[1]

A.   <u>Section 1983 Claims</u>

In relevant part, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State . . . ,
subjects, or causes to be subjected, any citizen of the
United States . . . to the deprivation of any rights,
privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action
at law, suit in equity or other proper proceeding for
redress . . . .

While § 1983 is not itself a source of substantive rights, it

provides a cause of action against any person who, under color of

state law, deprives an individual of federal constitutional

_____

[1]     Both parties have requested that the court take
judicial notice of relevant sections of the Shasta County Code,
the California Building Code, and the California Government Code.
(Defs.' Req. for Judicial Notice ("RJN") (Docket No. 8); Pls.'
RJN (Docket No. 11).)  The court need not take judicial notice of
relevant statutes and regulations.

rights or limited federal statutory rights.   42 U.S.C. § 1983;
Graham v. Connor, 490 U.S. 386, 393-94 (1989).   Here, plaintiffs
allege that Mull violated their First Amendment right to free
exercise and their Fourteenth Amendment right to due process.

               1.   Right to Free Exercise

      The Free Exercise Clause does not excuse individuals
from compliance with neutral laws of general applicability.
Emp't Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 878–79
(1990).   "A law is one of neutrality and general applicability if
it does not aim to 'infringe upon or restrict practices because
of their religious motivation,' and if it does not 'in a
selective manner impose burdens only on conduct motivated by
religious belief[.]'"   San Jose Christian College, 360 F.3d at
1031 (quoting Church of the Lukumi Babalu Aye, Inc. v. City of
Hialeah, 508 U.S. 520, 533, 543 (1993)) (alteration in original).
"If [a] zoning law is of general application and is not targeted
at religion, it is subject only to rational basis scrutiny, even
though it may have an incidental effect of burdening religion."
Id. at 1031.

      Here, there is no allegation that any provision of the
Shasta County Code, the Williamson Act, or the ADA infringes upon
plaintiffs' religious practices because of their religious
motivation or is selectively applied only to conduct motivated by
religious belief.   Further, there is no allegation that there is
no rational basis for these laws, a showing that would be
difficult to make in light of the forgiving nature of rational
basis scrutiny.   Accordingly, under the facts alleged, plaintiffs
have not adequately pled a § 1983 claim against Mull based on a

1 violation of their right to free exercise.

2       2.  <u>Right to Due Process</u>

3       Under the Fourteenth Amendment, individuals are

4 protected against the deprivation of liberty or property by the

5 government without due process.  U.S. Const. amend. XIV § 1.  "A

6 section 1983 claim based upon procedural due process thus has

7 three elements: (1) a liberty or property interest protected by

8 the Constitution; (2) a deprivation of the interest by the

9 government; (3) lack of process."  <u>Portman v. Cnty. of Santa</u>

10 <u>Clara</u>, 995 F.2d 898, 904 (9th Cir. 1993).

11       Here, plaintiffs claim that their due process rights

12 were violated twice: first when defendants determined that the

13 construction of a chapel on plaintiffs' land was not a

14 "compatible use" under the Williamson Act "without a hearing or

15 due process," (Compl. ¶ 36(A)); and second, when defendants

16 "without a hearing or due process" refused to issue plaintiffs a

17 building permit for the chapel under the so-called "dragnet

18 enforcement" provision, (<u>id.</u> ¶ 36(D)).  Leaving aside the

19 question of whether plaintiffs adequately alleged that the

20 government deprived them of a liberty or property interest

21 protected by the Constitution, plaintiffs' fail to adequately

22 allege a due process violation.

23       The Due Process Clause does not guarantee individuals

24 the right to a pre-deprivation hearing, rather it guarantees only

25 "due process."  <u>Matthews v. Eldridge</u>, 424 U.S. 319, 332-35

26 (1976).  As explained by the Supreme Court in <u>Matthews</u>, the

27 "fundamental requirement of due process is the opportunity to be

28 heard 'at a meaningful time and in a meaningful manner.'"  <u>Id.</u> at

1   333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

2   Determination of what process is due is a fact-specific inquiry

3   that

> requires consideration of three distinct factors: First,
> the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

10  Id. at 335.

11      Plaintiffs have not alleged how defendants'

12  determinations were made and communicated to plaintiffs or what

13  procedures were available, if any, for plaintiffs to challenge

14  these determinations.  Without such allegations, all that

15  plaintiffs' due process claim rests on is their bare legal

16  assertion that determinations were made without due process.[2]

17  Such allegations are insufficient to defeat a motion to dismiss.

18  Accordingly, plaintiffs fail to state a § 1983 claim against Mull

19

20      [2]  With respect to plaintiffs' allegation that they were
entitled to a notice and hearing under the terms of the

21  Williamson Act before defendants determined that the chapel was
not a compatible use, the first Williamson Act provision

22  plaintiffs cite provides for a notice and hearing only if a
"agricultural use, recreational use or open-space use" is to be

23  determined not compatible.  Cal. Gov't Code § 51201(e).  The
construction of a private chapel is neither agricultural,

24  recreational, nor open-space use under the definitions contained
in that same section.  See id. § 51201(b), (n), (o).

25      The second Williamson Act provision plaintiffs cite,
Cal. Gov't Code § 51250, provides that a landowner may request a

26  public hearing upon receiving notice that the city or county
administering the Williamson Act contract has determined that the

27  landowner is likely in material breach.  Plaintiffs do not
allege, however, that they ever demanded a public hearing.

28  Neither provision, therefore, suggests that plaintiffs were
entitled to a notice and hearing under state law.

based on a violation of their Fourteenth Amendment right to due process.

B.   RLUIPA

Congress passed RLUIPA in an effort to safeguard the constitutionally protected right to free exercise of religion from government regulation.  Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 985 (9th Cir. 2006) [hereinafter "Guru Nanak"].  Due to constitutional deficiencies with the earlier Religious Freedom and Restoration Act ("RFRA"), Congress limited the scope of RLUIPA to regulations regarding land use and prison conditions.  See Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

As an initial matter, while both parties agree that county zoning regulations and the Williamson Act are "land use regulations," the parties dispute whether the ADA and Shasta County building codes are "land use regulations" for the purposes of RLUIPA.  RLUIPA defines a "land use regulation" as "a zoning or landmarking law . . . that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has a . . . property interest in the regulated land . . . ."  42 U.S.C. § 2000cc-5(5).  The Sixth Circuit has explained that "a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest."  Prater v. City of Burnside, 289 F.3d 417, 434 (6th Cir. 2002).

Plaintiffs have not explained why the court should consider the ADA to be a "zoning or landmarking law" or cited any

13

cases in support of such a proposition.  The court can see no reason that it should construe the scope of RLUIPA in such broad terms.  Accordingly, plaintiffs have not stated a RLUIPA claim on the basis of Mull's enforcement of the ADA.[3]

Plaintiffs also allege that defendants violated RLUIPA in their enforcement of Shasta County building codes.  Plaintiffs allege both that defendants engaged in "dragnet enforcement" of Shasta County Code section 16.04.160.C and that defendants cited plaintiffs for construction on the chapel without a permit and issued the "red tag" stop order.  (Id. ¶¶ 36(D), 42, 43.)

With respect to the first allegation, although Shasta County Code section 16.04.160.C is a part of the county's "Buildings and Construction" code, the section makes explicit reference to the county's zoning laws.  The section provides that the county will not approve any building permit if there are ongoing violations of the county's zoning laws anywhere on the property on which the building is to be built.  In practice, therefore, this section makes obtaining a permit contingent upon compliance with zoning laws.  However, the section also makes obtaining a permit contingent upon a finding that there are no

---

[3]     In their Opposition, plaintiffs appear to suggest that RLUIPA covers their ADA-related allegations because they allege that the construction of the chapel affects commerce with foreign nations and the several states.  However, the RLUIPA condition to which plaintiffs refer is a separate limitation on the scope of RLUIPA claims brought under the substantial burden provision of that statute.  See 42 U.S.C. § 2000cc(a)(2) (providing that a plaintiff may bring his claim if one of three conditions, including an effect on interstate commerce, is met).  An effect on interstate commerce does not eliminate the statutory requirement that the claim involve the implementation or imposition of a land use regulation.  See id. § 2000cc(a)(1), (b)(1).

1  ongoing violations of other portions of the county code that have
2  nothing to do with zoning regulations.

3        While plaintiffs included several examples of
4  violations elsewhere on the parcel that defendants allegedly
5  relied on to deny plaintiffs a permit, (Compl. ¶ 36(D)), it is
6  not clear whether these violations were violations of the
7  county's zoning code or of other sections of the county's codes.
8  However, drawing all inferences in favor of plaintiffs as the
9  court must on a motion to dismiss, plaintiffs have adequately
10 alleged that defendants' enforcement of Shasta County Code
11 section 16.04.160.C was enforcement of a land use regulation.

12       With respect to the second allegation, the Complaint
13 admits that plaintiffs' earlier construction permit application
14 expired in December 2011, one month before the warning notice and
15 stop order were issued.  (Id. ¶¶ 40-43.)  The Complaint alleges,
16 and the copies of the warning notice and red tag attached to the
17 Complaint show, that the basis for the stop order was Shasta
18 County Code section 16.04.150.  (Id. ¶¶ 42, 43, Ex. C, Ex. D.)
19 Like section 16.04.160.C, section 16.04.150 is a part of Shasta
20 County's Buildings and Construction Code.  Unlike section
21 16.04.160.C, though, section 16.04.150 makes no reference to
22 zoning laws.  It simply prohibits construction without a permit.
23 The court can see no reason, and plaintiffs have provided no
24 reason, why it should consider section 16.04.150 to be a land use
25 regulation.  See Second Baptist Church of Leechburg v. Gilpin
26 Twp., 118 Fed. App'x 615, 616 (3rd Cir. 2004) (holding that a
27 local ordinance requiring certain buildings to tap into the sewer
28 system was not a "land use regulation" under RLUIPA).

15

1  Accordingly, plaintiffs have not stated a claim under RLUIPA

2  against Mull for actions taken pursuant to Shasta County Code

3  section 16.04.150.

4          This leaves plaintiffs' claims based on implementation

5  of Shasta County Code section 16.04.160.C, the Williamson Act,

6  and EA and AP zoning regulations as impositions of land use

7  regulations that could form the basis for their RLUIPA claims.

8  That statute limits a government's ability to implement or impose

9  land use regulations in two ways.  First, RLUIPA limits a

10 government's ability to impose or implement land use regulations

11 that impose a substantial burden on a person's religious

12 exercise.  42 U.S.C. § 2000cc(a).  Second, it limits the

13 circumstances in which a government may "impose or implement a

14 land use regulation in a manner that treats a religious assembly

15 or institution on less than equal terms with a nonreligious

16 assembly or institution."  Id. § 2000cc(b).  Plaintiffs bring

17 claims under both of these provisions, which the court will

18 address separately.

19          1.   Substantial Burden

20          RLUIPA provides:

21     No government shall impose or implement a land use
       regulation in a manner that imposes a substantial burden
22     on the religious exercise of a person, including a
       religious assembly or institution, unless the government
23     demonstrates that imposition of the burden on that
       person, assembly, or institution--
24          (A) is in furtherance of a compelling governmental
       interest; and
25          (B) is the least restrictive means of furthering
       that compelling governmental interest.

26

27 Id. § 2000cc(a)(1).  The statute broadly defines "religious

28 exercise" to include "any exercise of religion, whether or not

16

compelled by, or central to, a system of religious belief." Id. § 2000cc-5(7)(A).  Additionally, RLUIPA explains that the "building . . . of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." Id. § 2000cc-5(7)(B).  In weighing the magnitude of a particular burden, the court may not consider the significance of the particular belief or practice involved. Cutter, 544 U.S. at 725 n.13 (citing 42 U.S.C. §2000cc-5(7)).

Plaintiffs' allegations that Anselmo wishes to build a chapel on his land in order to worship in accordance with his faith are sufficient to allege that religious exercise is implicated.  This alone, however, is not enough to show a RLUIPA violation as the statute only applies to "substantial" burdens. 42 U.S.C. § 2000cc(a).

The Ninth Circuit has explained that the Supreme Court's free exercise jurisprudence, which is "instructive in defining a substantial burden under RLUIPA," demonstrates that "a 'substantial burden' must place more than an inconvenience on religious exercise." Guru Nanak, 456 F.3d at 988 (citing Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004)).  For a land use regulation to impose a substantial burden on religious exercise, "it must be oppressive to a significantly great extent.  That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." Id. (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)) (internal quotation marks omitted).

17

1    What constitutes a compelling burden is a question that
2    will depend on the unique facts of each case.  Here, plaintiffs
3    allege that Anselmo's religious beliefs compel him to build a
4    chapel on his own land.  Additionally, they allege that without
5    the private chapel Anselmo must drive three hours every day in
6    order to worship in accordance with his religious beliefs.  This
7    is more than mere inconvenience and is an allegation of a
8    significantly great restriction upon Anselmo's religious
9    exercise.  Whether the burden is in fact a substantial burden
10   under RLUIPA is a question of fact to be resolved at a later
11   point in this proceeding.

12        Defendant Mull additionally argues that plaintiffs have
13   not sufficiently alleged that he made any land use determinations
14   with respect to the private chapel.  It is not the case that
15   plaintiffs are bringing claims against the Governor of California
16   or the President of the United States, parties who it is
17   improbable played any role in making zoning determinations for
18   Shasta County.  Rather, they allege that Mull is the county
19   official responsible for overseeing the Shasta County Planning
20   Department and that Mull was responsible for determinations that
21   the proposed private chapel was incompatible with and in
22   violation of the Williamson Act and in violation of EA and AP
23   zoning regulations.  While plaintiffs could have included more
24   specific facts, they do state a claim that is plausible on its
25   face.  Accordingly, plaintiffs have adequately alleged that Mull
26   placed a substantial burden on their religious exercise in

27

28

18

1   violation of RLUIPA.[4]

2           2.  Equal Terms

3           In addition to prohibiting governments from imposing

4   land use regulations in a manner that substantially burdens

5   religious exercise unless the imposition is narrowly tailored to

6   achieve a compelling government interest, RPLUIA also prohibits

7   governments from imposing land use regulations in "a manner that

8   treats a religious assembly or institution on less than equal

9   terms with a nonreligious assembly or institution."  42 U.S.C. §

10  2000cc(b).

11          The elements of a violation of this provision, known as

12  the equal terms provision, are (1) the plaintiff must be a

13  religious assembly or institution, (2) subject to a land use

14  regulation, that (3) treats the religious assembly on less than

15  equal terms, with (4) a similarly situated nonreligious assembly

16  or institution.  Vietnamese Buddhism Study Temple In Am. v. City

17  of Garden Grove, 460 F. Supp. 2d 1165 (C.D. Cal. 2006).  Here

18  neither plaintiff is a religious assembly or institution.

19  Accordingly, plaintiffs have not stated a claim against Mull

20  under RLUIPA's equal terms provision.

21          C.  Qualified Immunity On Plaintiffs' Claim under RLUIPA's

22  _____

23      [4]   As discussed above, RLUIPA does not prohibit a
    government from imposing a substantial burden on religious
24  exercise through the enforcement of a land use regulations when
    such enforcement is in furtherance of a compelling governmental
25  interest and is the least restrictive means of furthering that
    compelling governmental interest.  Once a plaintiff is successful
26  in making a prima facie showing that a land use regulation
    imposes a substantial burden on his religious exercise, the
27  government must demonstrate that the regulation is narrowly
    tailored.  42 U.S.C. § 2000cc(a)(1)(A-B).  In his pleadings,
28  however, Mull has not argued either that the interest advanced is
    compelling or that a less restrictive means might be available.

1                    Substantial Burden Provision

2              Having determined that plaintiffs have stated a claim

3     against Mull under RLUIPA's substantial burden provision, the

4     court must address Mull's assertion that he is entitled to

5     qualified immunity on this claim.  "Qualified immunity is only an

6     immunity from a suit for money damages, and does not provide

7     immunity from a suit seeking declaratory or injunctive relief."

8     Hydrick v. Hunter, 669 F.3d 937, 939-40 (2012).  Accordingly, if

9     Mull is entitled to qualified immunity, it will only shield him

10    from plaintiffs' claim for damages; the claim for equitable and

11    injunctive relief will proceed.

12             Neither party seems to dispute the notion that the

13    doctrine of qualified immunity, traditionally available only in §

14    1983 and Bivens actions, should be imported to the RLUIPA

15    context.  Neither party, however, has provided any case law

16    explaining why it would be appropriate for qualified immunity to

17    be extended in such a manner, and the court entertains serious

18    doubts as to whether such an extension is appropriate.

19             This court is unable to find a single Supreme Court

20    decision in which the Court extended or considered extending

21    qualified immunity to a statutory claim that was brought

22    independent of § 1983 or Bivens.[5]  Upon further researching the

23    issue, however, the court found several cases in which the Ninth

24

25

_____

26        [5]    A Westlaw search for the term "qualified immunity" in
27    Supreme Court cases revealed 156 cases.  In every one of those
      cases in which the court addressed whether a defendant was
28    entitled to qualified immunity, the claim against the defendant
      was under § 1983 or Bivens.

Circuit applied qualified immunity to RLUIPA claims.[6]  District

and circuit courts have also extended qualified immunity to

various other federal statutory claims that were brought

independent of § 1983 or <u>Bivens</u>.[7]

---

[6]    <u>Barendt v. Gibbons</u>, No. 10-15954, 2012 WL 210525, at *1 (9th Cir. Jan. 25. 2012) (defendants entitled to qualified immunity from plaintiff's RLUIPA claim); <u>Williams v. Beltran</u>, 446 Fed. App'x 892, 893 (9th Cir. 2011) (same); <u>Grimes v. Tilton</u>, 384 Fed. App'x 603, 603 (9th Cir. 2010) (district court correct in holding that defendants were not entitled to qualified immunity from RLUIPA claim because plaintiff's rights under RLUIPA were clearly established); <u>Shilling v. Crawford</u>, 377 Fed. App'x 702, 705 (9th Cir. 2010) (assuming arguendo that money damages for RLUIPA claims are available against state actors sued in their individual capacities, defendants entitled to qualified immunity from RLUIPA claim); <u>Thompson v. Williams</u>, 320 Fed. App'x 678, 679 (9th Cir. 2009) (defendants entitled to qualified immunity from plaintiff's RLUIPA claim); <u>Von Staich v. Hamlet</u>, Nos. 04-16011, 06-17026, 2007 WL 3001726, at *2 (9th Cir. Oct. 16, 2007) (defendants entitled to qualified immunity from plaintiff's RLUIPA claim); <u>Haley v. Donovan</u>, 250 Fed. App'x 202, 203-04 (9th Cir. 2007) (holding that defendants were entitled to qualified immunity from plaintiff's RLUIPA claim and rejecting without analysis plaintiff's argument that qualified immunity applies only to constitutional, not statutory rights); <u>Sefeldeen v. Alameida</u>, 238 Fed. App'x 204, 205-06 (9th Cir. 2007) (district court's grant of qualified immunity was "appropriate" where plaintiff's allegations could not show that his statutory rights under RLUIPA had been violated).  There were two additional cases involving RLUIPA claims that explicitly did not reach the question of qualified immunity.  <u>Riggins v. Clarke</u>, 403 Fed. App'x 292, 294 (9th Cir. 2010); <u>Haley v. R.J. Donovan Correctional Facility</u>, 152 Fed. App'x 637, 639 (9th Cir. 2005).

[7]    <u>E.g.</u>, <u>Padilla v. Yoo</u>, --- F.3d ----, ----, 2012 WL 1526156, at *15 (9th Cir. May 2, 2012) (RFRA); <u>Bartell v. Lohiser</u>, 215 F.3d 550, 556 n.1 (6th Cir. 2000) (ADA and Rehabilitation Act); <u>Tapley v. Collins</u>, 211 F.3d 1210, 1216 (11th Cir. 2000) (Federal Wiretap Act); <u>Cullinan v. Abramson</u>, 128 F.3d 301, 307-12 (6th Cir. 1997) (Racketeer Influenced and Corrupt Organizations Act), cert. denied, 523 U.S. 1094 (1998); <u>Torcasio v. Murray</u>, 57 F.3d 1340, 1343 (4th Cir. 1995) (ADA and Rehabilitation Act); <u>Lue v. Moore</u>, 43 F.3d 1203, 1205 (8th Cir. 1994) (Rehabilitation Act); <u>McGregor v. La. State Univ. Bd. of Supervisors</u>, 3 F.3d 850, 862 & n. 19 (5th Cir. 1993) (Rehabilitation Act); <u>Cronen v. Tex. Dep't of Human Servs.</u>, 977 F.2d 934, 939-40 (5th Cir. 1992) (Food Stamp Act); <u>Doe v. Attorney Gen. of the U.S.</u>, 941 F.2d 780, 797-99 (9th Cir. 1991) (Rehabilitation Act); <u>Christopher P. by Norma P. v. Marcus</u>, 915 F.2d 794, 798-801 (2d Cir. 1990) (Education for All Handicapped

In all of the Ninth Circuit cases dealing with RLUIPA and in a vast majority of the district and circuit cases addressing other statutes, the courts have simply assumed that qualified immunity is available and engaged in little to no analysis of the issue. See generally Gary S. Gildin, A Blessing in Disguise: Protecting Minority Faiths Through State Religious Freedom Non-Restoration Acts, 23 Harv. J.L. & Pub. Pol'y, 484 n.338 (Spring 2000) ("[C]ourts never explained their rationale for borrowing standards of liability and defenses from § 1983 for purposes of RFRA."); Gary S. Gildin, Dis-Qualified Immunity for Discrimination Against the Disabled, 1999 U. Ill. L. Rev. 897, 915-48 (1999) (arguing that "courts adjudicating damage claims under the Rehabilitation Act, ADA, and IDEA have blindly cloned the § 1983 qualified immunity defense without considering whether the defense is consonant with Congress's intent").

Although the court may entertain doubts about the wisdom of this approach, which the parties in this case do not appear to challenge, the Ninth Circuit has repeatedly proliferated the view that qualified immunity is available for RLUIPA claims, and this court is bound to follow Ninth Circuit precedent.[8]   Accordingly, the court will determine whether Mull

---

Children Act); Affiliated Capital Corp. v. City of Houston, 735 F.2d 1555, 1569-70 (5th Cir. 1984) (Sherman Antitrust Act); Nat'l Black Police Ass'n, Inc. v. Velde, 712 F.2d 569, 574-80 (D.C. Cir. 1983) (Title VI and Crime Control Act).

[8]   The Ninth Circuit has also not yet decided whether damages are available against individuals for violations of RLUIPA.  See Shilling v. Crawford, 377 Fed. App'x 702, 705 (9th Cir. 2010).  Because qualified immunity is only immunity from damages, see Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007), vacated on other grounds, 129 S.Ct. 2431 (2009), it would have no place in the RLUIPA context if damages are not available.

is entitled to qualified immunity from plaintiffs' request for
monetary damages in connection with their claim under RLUIPA's
substantial burden provision.

Qualified immunity is "an immunity from suit rather
than a mere defense to liability." Mitchell v. Forsyth, 472 U.S.
511, 526 (1985) (emphasis omitted).  The Supreme Court has made
clear that the "driving force" behind the creation of this
doctrine was a desire to ensure that "insubstantial claims
against government officials be resolved prior to discovery,"
Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987), and has
"stressed the importance of resolving immunity questions at the
earliest possible stage in litigation," Hunter v. Bryant, 502
U.S. 224, 227 (1991).

"[Q]ualified immunity protects government officials
'from liability for civil damages insofar as their conduct does
not violate clearly established statutory or constitutional
rights of which a reasonable person should have known.'" Pearson
v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v.
Fitzgerald, 457 U.S. 808, 818 (1982)).  "The test for qualified
immunity is: (1) identification of the specific right being
violated; (2) determination of whether the right was so clearly
established as to alert a reasonable officer to its
constitutional parameters; and (3) a determination of whether a
reasonable officer would have believed that the policy or
decision in question was lawful." McDade v. West, 223 F.3d 1135,
1142 (9th Cir. 2000).

Here, the court has already determined that plaintiffs
have adequately alleged that their rights under RLUIPA were

violated when defendants' implementation of land use regulations prevented them from building a chapel on their land.   To determine whether Mull is entitled to qualified immunity with respect to plaintiffs' request for monetary damages, the court must therefore proceed with the remainder of the qualified immunity test.

The clearly established prong "serves the aim of refining the legal standard and is solely a question of law for the judge."  Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009).  This requirement is not merely a pleading requirement that a plaintiff may satisfy by claiming that his general right to free exercise, due process, or some other right has been violated, but rather demands that the right be established in a "particularized, and hence more relevant, sense."  Anderson, 482 U.S. at 639-40.  Such specificity does not mean qualified immunity exists "unless the very action in question has previously been held unlawful," but does require that "in the light of pre-existing law the unlawfulness must be apparent."  Id. at 640.

If a right is clearly established, a public official is granted qualified immunity only if a reasonable official would not have known that his conduct violated the clearly established right.  See id.  This recognizes "'that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude" that their conduct comports with the Constitution and thus shields officials from liability in such instances.  Rodis v. City & Cnty. of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009) (quoting Anderson, 483 U.S. at 641)).  The

24

Supreme Court has summarized that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Plaintiffs' RLUIPA substantial burden claim is based upon their allegations that defendants substantially burdened plaintiffs' religious exercise when defendants enforced various land use statutes in a manner that blocked construction of a chapel on plaintiffs' property.  The relevant inquiry is thus whether there is a clearly established right under RLUIPA protecting those who desire to construct religious buildings on their own land in violation of land use regulations.

While protective of religious exercise, RLUIPA does not, "impose an affirmative obligation upon the government 'to facilitate . . . the exercise of religion.'"  The Victory Center v. City of Kelso, No 3:10-cv-5826, 2012 WL 1133643, at *4 (W.D. Wash. Apr. 4, 2012) (quoting Mayweathers v. Newland, 314 F.3d 1069 (9th Cir. 2002).  Nor does the statute guarantee plaintiffs the right to exercise their religion wherever they desire or excuse them from complying with land use regulations.  See Living Water Church of God v. Charter Twp. of Meridian, 258 Fed. App'x 729, 736-737 (6th Cir. 2007) (RLUIPA's language "indicates that it is not intended to operate as 'an outright exemption from land-use regulations.'" (quoting Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 762 (7th Cir. 2003)); Westchester Day Sch. v. Vill. of Mamaroneck, 417 F. Supp. 2d 477, 544 (S.D.N.Y. 2006), aff'd, 504 F.3d 338 (2d Cir. 2007) ("[C]ourts must ensure that the facts warrant protection under RLUIPA, rather than simply granting blanket immunity from zoning

25

1  laws.").

2       RLUIPA case law reflects the difficulty that courts
3  have had balancing the enforcement of neutral laws against the
4  desire to protect religious rights and determining how much of a
5  burden on religious exercise rights is too much such that it
6  would trigger strict scrutiny.  See Washington v. Klem, 497 F.3d
7  272, 278 (3rd Cir. 2007) (noting that interpreting the term
8  "substantial burden" found in the text of RLUIPA is difficult
9  "because Supreme Court precedent with respect to the definition
10 of 'substantial burden' in the Free Exercise Clause context has
11 not always been consistent").

12      Several cases from this circuit have found that
13 plaintiffs' religious exercise rights may be substantially
14 burdened when land use regulations are enforced in a way that
15 prevents them from constructing places of worship on their own
16 land, as plaintiffs allege occurred here.  In Int'l Church of the
17 Foursquare Gospel v. City of San Leandro, --- F.3d ----, No. 09-
18 15163, 2011 WL 1518980 (9th Cir. Apr. 22, 2011), a city had
19 denied both rezoning and conditional use permits applied for by a
20 church seeking to build a new place of worship on its land.  The
21 Ninth Circuit reversed the district court and held that a factual
22 issue existed as to whether the city's denial of the applications
23 substantially burdened the church's religious exercise, relying
24 on evidence the church had submitted showing that "no other
25 suitable site exist[ed]" for it to build on.  Id. at *7-10.  In
26 another case, where a county's repeated denials of a conditional
27 use permit were so broad that they "could easily apply to all
28 future applications" by the plaintiff to build a temple on its

26

land, the Ninth Circuit found that a substantial burden existed. Guru Nanak, 456 F.3d at 989.

There are other cases, however, where courts have not found a substantial burden where land use regulations prevented religious organizations from constructing desired buildings on their property.  In San Jose Christian College, a religious college wanted to expand its facilities.  The Ninth Circuit held that because there was no showing that the plaintiff would be denied the re-zoning it desired if it were to submit a complete application as defendants had requested or that there was no other suitable location for the planned expansion, there was no substantial burden.  San Jose Christian College, 360 F.3d at 1035.  In another case, the district court held that where there was "nothing to suggest that [the plaintiff] would not be successful if it attempted to build . . . on another parcel, or even if it significantly scaled back its current project," there was no substantial burden where the city denied a conditional use permit necessary to expand a religious school's facilities. Hillcrest Christian Sch. v. City of Los Angeles, No. CV 05-08788, 2007 WL 4662042, at *5 (C.D. Cal. July 12, 2007).

Cases where a plaintiff leased as opposed to owned the property in question exhibit the same tension.  In one case where interactions between the parties demonstrated "outright hostility" to plaintiff, a California district court found that there was "no reasonable expectation that any application" by the church for the necessary conditional use permit would succeed, and that the church's free exercise right was substantially burdened.  Grace Church of N. Cnty. v. City of San Diego, 555 F.

Supp. 2d 1126, 1137 (S.D. Cal. 2008).  In a second district court case, though, a religious organization leased property to house its "educational sessions . . . , cultural events and conferences."  Victory Center, 2012 WL 1133643, at *1-2.  Because the zoning regulations at issue only excluded plaintiff's facility from the first floor of buildings located within a four-block subarea of a city, the court there held that the regulation was an inconvenience on the plaintiff's religious exercise and not a substantial burden.  Victory Center, 2012 WL 1133643, at *4-5.

While some case law suggests that preventing construction of a building for religious use on one's own property constitutes a substantial burden, other case law suggests that there is no substantial burden if the plaintiff can find another location on which to build.  Because plaintiffs do not allege that there is no other place for the desired chapel, the case law does not clearly establish that plaintiffs suffered a substantial burden when Mull and the county prevented construction of the chapel on plaintiffs' property.  It follows that it would not have been clear to a reasonable official in Mull's position that he was acting in violation of plaintiffs' rights.[9]  This uncertainty is compounded in light of the fact that the actual owner of the property in question is the limited partnership Seven Hills, not Anselmo.  Although corporations and limited partnerships have broad rights, the court has been unable

---

[9]    Even if this were clearly established to be a substantial burden, Mull's actions would not be illegal if strict scrutiny were satisfied.  Neither party addressed this portion of the RLUIPA inquiry.

1  to find a single RLUIPA case protecting the religious exercise

2  rights of a non-religious organization such as Seven Hills.

3          Based on the lack of clear case law establishing that

4  RLUIPA entitles property owners to exemption from zoning laws

5  when those zoning laws prevent them from building a place of

6  worship on their own property and the novelty of a non-religious

7  property owner asserting rights under RLUIPA, the court concludes

8  that plaintiffs' RLUIPA rights were not so clearly established

9  that a reasonable officer would know that his conduct violated a

10 clearly established right.  Accordingly, the court will grant

11 defendant's motion to dismiss plaintiffs' claim for monetary

12 relief under RLUIPA's substantial burden provision because

13 defendant Mull is entitled to qualified immunity on that claim.

14         IT IS THEREFORE ORDERED that Ross Mull's motion to

15 dismiss plaintiffs' claims under § 1983 and under RLUIPA's equal

16 terms provision be, and the same hereby is, GRANTED.

17         IT IS FURTHER ORDERED that Ross Mull's motion to

18 dismiss plaintiffs' claim for monetary relief under RLUIPA's

19 substantial burden provision be, and the same hereby is, GRANTED.

20         IT IS FURTHER ORDERED that Russ Mull's motion to

21 dismiss plaintiffs' claim for injunctive and equitable relief

22 under RLUIPA's substantial burden provision be, and the same

23 hereby is, DENIED.

24         Plaintiffs have twenty days from the date of this Order

25 ///

26 ///

27 ///

28 ///

1  to file an amended complaint, if they can do so consistent with
2  this Order.
3  DATED:      June 7, 2012
4
5                                                                    WILLIAM B. SHUBB
6                                                                    UNITED STATES DISTRICT JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28